May please the court. Kathy Park for the defendants. This case presents two significant, novel, and determinative questions regarding the interpretation of the city human rights law that we believe are appropriate for certification to the New York State Court of Appeals, just like this court did recently in the Chalk of the Abraham case. On the first question as to whether a plaintiff may bring a disability discrimination claim based purely on a mistaken perception of alcoholism, of untreated alcoholism, under the city human rights law, the New York State Court of Appeals, nor any state appellate decision, has ever weighed on this question. The novel theory says that I think it boils down to legislative history and the broad construction that's given to the city human rights law would allow us to predict what the answer will be. We agree if this court should, if should this court, we still believe that the state, it would still be consistent with this court's preference to have state courts resolve novel issues regarding the interpretation of state law. We agree that however that this court may resolve this question but but in defendants favor and here's why. If you look at the plain text of the statute where it prohibits discrimination based on an actual or perceived disability and where there's a statutory definition defining what a disability means in the context of alcoholism that rightly understood, plaintiffs cannot bring their discriminate, their claim on a theory that they were simply mistakenly as alcoholics. We believe that the city has been mistakenly perceived as fully recovered or recovering alcoholics. That's right. We believe the right way to understand these provisions is. What does it mean to be perceived as a matter of disability discrimination? To be perceived as a fully recovered alcoholic? Your Honor, I'll admit that it's not clear but here we just need to decide. It doesn't make sense to me. It does make sense and here let me try to put it frame it in a way that might shed some clarity on on how to understand these provisions. The city human rights law is a statute about identifying what are the prohibited motivations that an employer can hold against an employee based on their belonging to a protected class. Now rightly or wrongly the the city human rights law does not prohibit an employer from taking action based on a motivation that that employee is is an alcoholic without any without any evidence that he is a recovering alcoholic or recovered alcoholic. Now because now this the actual or perceived piece of the of the statute means that if that employer holds that motivation doesn't matter if the employer happens to be factually incorrect about whether the employee actually belonged to that protected class. Even if that employer holds that motivation and it turns out that he was wrong about that employee being an alcohol being an being a recovering alcoholic or being a being a recovering alcoholic or someone with a perceived disability that that doesn't mean that the employee employer is off the hook. In terms of the facts what leads you to tell us that that language does not the language should be read as you say it should be. Because if because the statute because the actual or perceived language should be understood as establishing parity. Another way to look I'm asking you to link that to the facts of this case. In this case the employer in this let me take a step back to answer your honor's question. In this case the NYPD has never this in this case the plaintiffs have never claimed that they were alcoholics at all. In the posture that we're in we we acknowledge that that's that has to be the understanding although we we can we don't concede that point but we understand that that's that's right. They they were not alcoholics but they were they were never alcoholics and they were not and their claim just rests on being mistakenly perceived as alcoholics not as mistakenly perceived as a recovering alcoholic. And because of that the statute doesn't provide any any cause of action at least under the city human rights law. Now they may have other remedies in it to to contest a mistaken diagnosis or to to challenge the the counseling services units practices. They could bring an article 78 proceeding and when they initially receive the diagnosis from from the NYPD they could bring an emergency article 78 proceeding. Under what what theory? Under the theory that an article 78 under CPLR 7803 that that exists to contest the the decisions of an agency and I'll point your honor to. Contest on what basis? That it would that it was an arbit that it wasn't that that it was a arbitrary arbitrary and capricious. Alternatively they could bring they could bring a challenge to the broader practices of of this counseling services unit by filing a complaint with the state agency that is charged with with reviewing the practices of employment assistance programs as the one that is an issue here and in fact the state agency did consistently certify the CSU's practices as comporting with regulations and even had before it McKinnon's 2007 diagnosis and found that it didn't violate any procedures and that the counselors who were employed at the time frame that are at issue here were also consistently certified. Of course you agree just mind me whether or not you agree that under the law there is a basis for a disability discrimination claim that rests on the mistaken perception of someone being an alcoholic. We agree arguably that there is I haven't found a case establishing that point but arguably there is but we believe that that doesn't dictate the result in this case and here's why. The ADA neither the ADA nor the state provision have a counterpart that in the city human rights law. That in the context of alcoholism a discrimination claim cannot lie if that in that employee is not recovering or or or in recovery. How do we read the 2005 expansion that was promulgated by the New York City Council of anti-discrimination law? As I understand it the this city's anti-discrimination law is probably more expansive than any other urban areas. That's right there is a construction provision in the 2005 restaurant in the amendments to the in the 2005 amendments to the City Human Rights Act that that provides that when there are similarly worded provisions in the state and and federal laws that that has to be the floor upon which the city human rights law has to has to be above and that was exactly what the City was trying to address in the Court of Appeals had right before those amendments had interpreted a city human rights law provision. Your position is I think that the statute doesn't say it or says it's not covered and if you look at the wording of the statute your position is it's not the city is not covered and therefore doesn't matter how liberal the interpretation is it still doesn't cover it. That's right that the mandate to interpret these provisions broadly is not a license to rewrite language out of the statute where there is plain text where there is plain text. Another way to think about this is who's in the protected class? The City Human Rights explicitly makes clear that that in the context of alcoholism you have to be recovering or recovered in order to belong. Can you explain what the statute says but you can you explain why the city chose and what underlies their choice to limit it to recovering alcoholics? Your Honor it appears that it appears I mean I think the right understanding of that is that the City Council wanted to specifically cabin discrimination protection only to alcoholics who have the status of being a recovering alcoholic or who had previously been recovered. That's not to protect people who were alcoholics. That's right that if someone is bluntly a drunk and an employer takes action based purely on that status that the City Human Rights Law wasn't concerned about that and it does under an actual disability claim you cannot bring a disability discrimination claim just based on someone's conduct as an alcoholic under the City Human Rights Law. The City Council explicitly cabined that class of protected individuals to people who are recovering or who had recovered and were free of abuse and that makes sense. But not people who were wrongly perceived to be alcoholics? It establishes parity. Another way to look at it is what's a protected status under the City Human Rights Law Act and it doesn't matter if you actually have that status or you're perceived to have that status. If that status is protected under the City Human Rights Law Act you can bring a claim. If it's not it doesn't matter whether you were perceived to have that status or not. Let me ask you because one of the concerns relating to certification always is the costs associated with certification. Some of these claims prevailed after a jury trial and you propose expediting the certification. Is that going to cut down on the costs? What does that mean expediting the certification? Well certainly it would resolve the proceedings in a faster basis than it would in terms of any delay that might arise from certifying these questions to the Court of Appeals. Just tell me, would that mean that we're telling the Court of Appeals of the State of New York that they ought to hurry? No, no. We're just saying that as plaintiffs, as defendants, as parties to this appeal, we would be willing to expedite it. Understanding that plaintiffs would be facing an additional delay in the resolution of their case. Can you also address the other prong of the certification analysis is the importance to the state. Why this question is important enough to ask to certify? It's important. I mean if you just look at just these types of claims you would imagine would arise pretty frequently in the context of employment assistant programs, which is a core piece of the NYPD's operations and in other agencies as well. If this court were, or any court, were to find that a plaintiff could bring a discrimination claim based purely on a mistaken diagnosis, whether it be for alcoholism or any other disability that is protected under, or any disability, then it would certainly change the calculus in terms of whether agencies would continue having these programs, whether it would certainly lead to a rise of costs or litigation costs, and it would certainly affect the practices of many agencies. And it's especially illustrated if you look at the NYPD, who must ensure that its officers are fit for duty, are capable of acting in split-second decisions, and where the NYPD even most recently has been subject to criticism for officers who have been, who appear to have been subject. This is one of the only questions you don't have to answer, but when the Corporation Council makes a determination about how to proceed in a case like this involving discrimination and the anti-discrimination laws of the city of New York, does it, as a regular matter, in the way that the United States Solicitor General's office does it, consult with, for example, the Human Rights Commission? It's on a case-by-case basis, but it does require coordination. In most, not all circumstances, but in most circumstances, it would require coordinations with the Human Rights Commission. I just want to just quickly touch on the claims that are raised on summary judgment, just particularly on the Fair Labor Standards Act claim. Your Honor, our position is that the district court correctly dismissed that claim on summary judgment, that under any common-sense understanding of what's at issue here, the alcohol treatment that McKinnon is trying to receive overtime compensation for is not something that is integral or indispensable to the job duties that she was hired to perform, which was policing work. Most police officers are not going to require alcohol treatment or any of the services that she received here. I hope that you would say the vast majority. Yes, I would hope so. Yes, it's in the record that the vast majority will not, although it is still a segment of the NYPD's force who do come under the CSU's services, which is why we have that program in the first place. And because most employees aren't going to be requiring this, it cannot be properly understood as an intrinsic element of their core policing work. And with that understanding, we believe that the district court… You may be right, but I kind of wonder about that. That is to say, the reason this program exists, it's a stretch to say it exists for the benefit of the policeman or having a problem. It seems to me, surely the principal reason is to have a dependable police force, one that the public depends on. That's not because you care about that policeman and his or her well-being, it's because you care about the police department. Your Honor, I would disagree with that framing, and here's why. In a lot of ways, it would be much easier for the NYPD to simply sever ties with an employee who it perceives to have an alcoholic problem. There's nothing binding NYPD to continue employing these officers and continuing to invest resources into them, especially when, as noticed previously, it's not going to be the vast majority of its NYPD force. The Employment Assistance Program exists as a second chance for employees. It's a way for NYPD to rehabilitate them, understanding the unfortunate reality that the stresses of the job will at least have… I'm a bit teary. …that it is a real problem, or it is something that happens, that there will be officers who will struggle with alcohol problems, and a lot of that is going to be… In order to address that, this program exists, but it is… I would say it exists to help employees because, again, unlike in the Sahe case where the agency there had to… there was a limited number of applicants or people who could fill these positions, it's in the record that it's not something that is a problem for the NYPD, and here it just exists as a way for the agency to help its employees so that they can ideally return to service. Your Honor, I see that my time has expired. I'll reserve the rest of it for my rebuttal. Good morning. May it please the Court. Good morning. I'm Lisa Jocelyn. I'm here on behalf of the plaintiffs and cross-appellants Kathleen McKeenan and Jamie Nardini. From the outset, it is our position that the city is overcomplicating much of what is going on in this case. The New York City human rights law has been consistently interpreted, analyzed, and applied and construed to have the broadest, most liberal protections out there. What if the New York City Council decided to explicitly pass a law that was more restrictive than the ADA and the New York State human rights law? They wouldn't, Your Honor, and they haven't. In fact, in 1991… Could they? They could. Oh, they certainly could if they chose, absolutely. But based on… Isn't that the question as to whether they did, in this instance, choose to do that by referring to perceived alcoholism? That is the question, one of the questions brought before you today, and they didn't. The specific provision that the defendants are harping on is Section 8-102.16c. That provision begins with the words, in the case of alcoholism, and it proceeds from there. It is our position, Your Honor, that it doesn't even apply. Well, the provision says, in the case of alcoholism, the term disability shall refer to, broadly speaking, recovering alcoholics. The anti-discrimination prohibition is you're prohibited from discriminating because of actual or perceived disability. So why isn't the plainest understanding of that provision is in the context of alcoholism, disability just does not extend to people who are not recovering? For two reasons. The first reason is we don't have the case of alcoholism here. We have a case of… But you have the case of disability, and disability seems to me to be a defined term in 8-102.16c in the context of alcoholism. Well, the disability of alcoholism is limited in that respect. We have a perception of disability, which is a separate and distinct avenue for remedying under the statute. What is very clear with the legislative history of this statute and, I believe, including this section, is that the New York City Council has, in fact, simply codified something that has been interpreted and construed of the ADA and the human rights law in the last couple of decades. And under both the ADA and the human rights law, it is well settled, and I don't think anyone in this courtroom would disagree, that if you are an active alcoholic who is not in recovery and is still using, you can't be protected. You are going to be judged the same as any other employee. You can be disciplined for poor performance. Do you think that it would be wrong to certify in this case? I'm sorry, sir? Do you think that it would be a mistake to certify in this case, and if so, why? I don't know that it would be a mistake. I don't think it's warranted, Your Honor. And it's not warranted because the plain language says, in the case of alcoholism, and we don't have that. We have a perception of alcoholism. There's no dispute that none of my plaintiffs were alcoholics. On appeal, it's admitted that they're not. They were mistakenly perceived as such. And in case, we don't have any limitations. And there is no case that I'm aware of. Do you agree that this is an important matter, a public policy matter? It's an important matter. Absolutely. So if it's an important public policy matter, it's not an important federal public policy matter. It's an important city, arguably state, policy matter. Is that correct? It's a policy matter to which the New York City Council has adequately spoken. And because of their language and because of the oft well-settled interpretation of the law in general, there is no need to certify. Are you aware of any other case like this that brings to court this specific issue? No, Your Honor. There was another case prior to ours, but it got dismissed on summary judgment. And I don't think they've reached this issue specifically because they had other issues that it was dismissed upon. So this would be a matter of first impression. However, we don't believe it. The city proposes two questions, but the first question, do you agree with that question, if we were to certify, that that's an appropriate question to ask? Which question, Your Honor? I think that the question. Whether perception of disability is covered or perception of alcoholism. Well, that's the basic question, but they have a very specific way to put it. But you don't. They are asking about whether it should be specifically limited to perception of. Correct. Untreated or treated alcoholics. The way they're framing it is overcomplicating it, and it's hard to follow. However. So what would you propose? I would propose that you not certify at all because. I understand that. The case of alcoholism doesn't apply to my plaintiffs, not at all. We are not alcoholics. We never have been. There's no accusation that they have had improper performance at work because of alcoholism or alcohol use. In fact, my two plaintiffs hardly drink. Well, one of them hardly drinks. The other drank socially. It never impacted the job, and every supervisor and colleague and even the CSU has admitted that that's the case. There's a little question here, I think, at least as it comes to us, that they're not alcoholics. Yes, Your Honor. That's conceded for the purpose of argument. And they were treated as though they were. One being sent away for a month to Pennsylvania without her children. There's a little question that your clients were hurt, to me at least. But the problem is we have these statutes, and that's what's before us, not our empathy. I understand. No court, no state or federal court, has interpreted any provision of the city human rights law to be more restrictive and more narrowly construed than the state or federal statutes. Both the state and federal statutes would permit this remedy. There is no reason to assume that by that provision of the statute, that the New York City Council would suddenly upend their own policy of having broader, more liberal protections. Remind me, I should know this, but supposing you lose on this issue, do you get it back through the federal law, the other statutes, the state and federal statutes? If you lose on this issue under the city, do you get it back under the other two? And if not, why? Well, in the facts and the procedure of this case, Jamie Nardini only has the city human rights law left to her because, on summary judgment, which we press appealed on, but on summary judgment Judge Carter denied her the right to bring claims under the ADA and human rights law. Kathleen McKeon had claims under the ADA and human rights law, but they were found against her by the jury. And this is obviously everything. So what's wrong with the question that the city asks us to certify, the first question, whether under the administrative code provisions a plaintiff may bring a disability discrimination claim based purely on a mistaken perception of untreated alcoholism? I don't know that there's anything wrong with it as it's laid out, but I don't believe that's the right question. I think the right question is, is perception of alcoholism covered under this statute in the same manner that it is under the state and federal statutes? Because nothing under the civil rights law, the New York City human rights law, can be construed to have less protection. And that's clear based on the three amendments to the statute. Can you address the second question that the city has asked us to consider certifying? Whether the Leswell standard applies? Absolutely, Your Honor. We believe that the Leswell standard has been consistently applied under the disability, perception of disability, gender, age, race, as well as sexual harassment and gender-based discrimination. And it's been consistently applied by the First Department, the Second Circuit, and Your Honors have been joined on several of those cases, and the Southern District of New York. There is actually, there are no cases that specifically say that the Leswell standard only applies in sexual harassment scenarios as the city has suggested. And the cases, they cite two cases for that, and those cases actually do not support that restriction. And because the First Department has made very clear that the Leswell standard applies to all cases under the city human rights law, we don't see why there would be any question that needs to be certified to the court of appeals. I take it that your position is actually a little bit more precise than that, which is that for whatever reason, rightly or wrongly, we decided in Mihalic to issue an opinion, a presidential opinion, on this issue. And you can maybe quibble about whether the Leswell, the applicability of the Leswell standard extends to disparate treatment claims, but I think that there's a compelling argument that you make for that. And so we don't even need to look at other New York State decisions. We are bound by a decision that says effectively what you ask us to embrace. That's correct, Your Honor. But if you were to look beyond the court, and if we are interested in the issue of certification, it is even clearer still in the First Department that the same result would happen based on cases and presidential value that we have already. There is no question. The only dispute about this is from the cities and their arguments. And can you also address your adversary says that there were other remedies available. The anti-discrimination remedy doesn't work, but an Article 78 proceeding could have addressed your client's mistaken diagnosis at an earlier stage. Your Honor, that is partially correct, but the availability of one remedy should never preclude other remedies that are available under the law. The Article 78 is very distinct. It has very limited remedies, and you have a certain standard you have to meet. We have a civil rights case. We brought it as such. We've got through trial. The jury found in our favor. And simply because there was one other option with a very short limitations period and limited remedies, it shouldn't prevent our clients. When you say limited remedies, just elaborate on that a little bit. Well, no attorney's fees, no emotional distress damages. They could get lost wages. They could get some other pecuniary loss remedied there, but the extent of the remedies are much less than under the civil rights statutes. And punitives as well under. No punitives. No punitives under, right, the Article 78. That's right, Your Honor. Anything else? Okay. Thank you. Your Honor, just very briefly, Your Honor, my adversary acknowledged on the first question of whether this question of the actual or perceived discrimination piece should be certified to the State Court of Appeals, my adversary concedes or admits that it's an important policy question, that no case has ever passed on this question. And certainly the fact that no plaintiff has not brought a case at this point, if this court were to or if the district court's ruling that there is a discrimination claim that lies from a perceived alcoholism piece. Our problem is that both of you take that the applicable language of these two provisions is clear, but it goes in opposite ways. If there's any ambiguity, then that just counsels even more in favor of certifying it to the State Court of Appeals to address. It's not unusual for two sides to get up and say, this is absolutely my way and the evidence is absolutely clear my way, and somehow we're left to think maybe it's not so absolutely. I understand, Your Honor. And if there is indeed a question at a minimum, that just means that this case is even more appropriate for not this court, but the State Court of Appeals to address in the first instance. And the same goes for the second. It's obvious, but of course you might lose by our doing that. That is, it might be that if we were to decide it ourselves, it would seem clear on the statute. We're aware that certifying it doesn't mean that we've won, but we just believe it's a litigation strategy choice that we've made, that we've decided that it would just be. Did you remove this case to federal court in the first place? We did. From state court to federal court? Yes, that's correct. At the time, however, The litigation strategy has changed? Yes, because the only remaining claims that are really at issue now are the city human rights law claims. At the time that this case was removed to federal court, we had the ADA claims and the state law claims, and now we're at a different juncture. As well, for the second question on the materiality requirement, of whether that has continued after the Restoration Act, Your Honors, at a minimum, this plain text of the statute does not speak to this. Although it explicitly eliminated the materiality requirement across the board for retaliation claims, it did not do so for garden variety disparate treatment claims. When you read Mihalik, when I was on the panel, I'm a little surprised by the city's characterization of that. It did not seem to limit, by its terms, the holding to sexual harassment and hostile work environment claims. That's right, Your Honor. Mihalik did not explicitly limit that. But at the minimum, we think that there's an inconsistency with state appellate division courts that have gone the other direction. We already went down the road of writing, and people can quibble about this, whether we should write an opinion, a presidential opinion, on a matter that's purely of New York City or state law. But we've gone down the road, and now we're bound by this precedent. So the only avenue, but you correct me if you think I'm completely wrong, the only avenue that we have is to revisit Mihalik. Is that correct? Your Honor, I don't have the case at hand. I believe that would normally be correct, except when there's been state court decisions following the Second Circuit's decision, initial prediction of how the Court of Appeals would rule, that those state court decisions then serve as a predictor as well. How many state court decisions are we talking about? We're talking about, again, I don't have the number. Yes, Your Honor, but it's consistent with the initial state court decisions, both before in Block and in Messenger, that's explicitly defined that an adverse employment action under the city human rights law has to have a materiality requirement, and no court decision has ever grappled with that precedent following the restoration, even when that was explicitly held in the Block case. If there's any, again, just like the first issue, if there's any ambiguity here, we think that it just means that it's more appropriate for the State Court of Appeals to address. If there are no further questions, we ask this Court to vacate the judgment against defendants and enter it in our favor, and also to affirm the grant of summary judgment to defendants on the claims that are raised on appeal. Thank you.